IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEE REAL ESTATE ADVISORS, LLC<br>800 STONE BARN ROAD<br>TOWSON, MD 21286<br><br>and<br><br>GROUP 4 DESIGN, INC.<br>1240 KEY HIGHWAY<br>BALTIMORE, MD 21230<br><br>PLAINTIFFS,<br><br>v.<br><br>O'NEILL PROPERTIES GROUP, L.P.<br>2701 RENAISSANCE BLVD., 4TH FLOOR<br>KING OF PRUSSIA, PA 19406<br><br>and<br><br>ESSINGTON AVENUE PARTNERS II, L. P.<br>2701 RENAISSANCE BLVD., 4TH FLOOR<br>KING OF PRUSSIA, PA 19406<br><br>and<br><br>TRANSYSTEMS, INC.<br>324 PENNSYLVANIA AVENUE WEST<br>WARREN, PA 16365-2415<br><br>and<br><br>MERION CONSTRUCTION GROUP, INC.<br>700 S. HENDERSON ROAD, SUITE 225<br>KING OF PRUSSIA, PA 19406<br><br>DEFENDANTS. | CIVIL ACTION NO. 2:10-cv-03903-BMS |

## SECOND AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR TRIAL BY JURY

Plaintiffs, Lee Real Estate Advisors, LLC ("Lee") and Group 4 Design, Inc. ("Group 4"), through their undersigned attorneys, hereby file this Complaint against Defendants O'Neill Properties Group ("O'Neill"), Essington Avenue Partners II ("Essington"), TranSystems, Inc. ("TranSystems") and Merion Construction Group, Inc. ("Merion") for copyright infringement relating to their designs, drawings and plans of the Philadelphia Regional Produce Market, the use of their designs, drawings and plans by the Defendants without authorization or license, and, in the case of TranSystems, the removal of Copyright Management Information from their drawings and plans, and state:

## JURISDICTION AND VENUE

1.      This Complaint arises under the Copyright Act of 1976 as amended (17 U.S.C. §§ 106, 501 and 1202). This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

2.      Plaintiff Lee is a Maryland limited liability company with its principal place of business located at 800 Stone Barn Road, Towson, Maryland. It is owned by Gary Lee, a resident of Maryland. It and Gary Lee are nationally recognized designers and developers of perishable food cold storage and distribution facilities.

3.      Plaintiff Group 4 is the owner of all of the rights, titles and interests in certain copyright registrations and designs, plans and drawings, referenced to herein, including the copyright therein, and the architectural works and technical drawings contained therein, of Colimore Thoemke Architects, Inc. ("Colimore"), a thirty seven year old architectural, planning and design firm, as well as of all of Colimore's rights, privileges and obligations arising as a result of this action against Transystems, Inc., and others, in the United States District Court for

20741.001/87752
10.12.10

the Eastern District of Pennsylvania in which copyright infringement is asserted, by virtue of an assignment from Colimore to Group 4 on or about August 26, 2010 (the "Assignment"). A true and accurate copy of the Assignment and evidence of its filing for recordation with the Copyright Office are collectively attached hereto as **EXHIBIT A**. Group 4 is a Maryland corporation with its principal place of business located at 1240 Key Highway, Baltimore, Maryland.

4.      Defendant O'Neill is a real estate developer located at 2701 Renaissance Boulevard, 4th Floor, King of Prussia, Pennsylvania.

5.      Defendant Essington is affiliated with O'Neill and is located at 2701 Renaissance Boulevard, 4th Floor, King of Prussia, Pennsylvania. Upon information and belief, Essington was formed for the purpose of acquiring the 46-acre parcel of real property on which the Philadelphia Regional Produce Market (the "Market") is being constructed at 6700 Essington Avenue in Philadelphia.

6.      Defendant TranSystems, among other services, provides architectural, engineering and planning services and is located at 324 Pennsylvania Avenue West, Warren, Pennsylvania. TranSystems performed architectural, engineering and planning services for O'Neill related to the development of the Market.

7.      Defendant Merion is a general contractor affiliated with O'Neill, located at 700 S. Henderson Road, Suite 225, King of Prussia, Pennsylvania. It performs construction services related to the Market.

## FACTS COMMON TO ALL COUNTS

### Lee and Colimore's Development of the Copyrighted Works

8.      In June 2000, Lee met with the members of the Board of Directors (the "Board") of the Philadelphia Fresh Food Terminal Corporation (the "PFFTC"), the owner of the Market,

20741.001/86786-2

regarding a redesign or replacement of the aging Market (the "Project").  Lee and Colimore worked together on the redesign of the Market.

9.      In May 2001, Lee presented to members of the PFFTC Board conceptual plans, drawings and a construction analysis that he and Colimore had created for renovation of existing buildings in which the Market was located.

10.     In June 2003, Lee and Colimore presented to members of the PFFTC Board an alternative plan which they created for a four-year phased redevelopment of the Market, as it then existed, into a new design.  This design became the basis for all subsequent designs of the Market, and its construction.  Colimore and Lee, however, recommended that a new site be obtained for the construction of the Market employing their design because a four-year phased development on the existing site would disrupt the business of the Market.

11.     In July 2003, photographs and a description of the Navy Yard, as a potential site for the Market, were forwarded on behalf of the Market to Colimore and Lee for their evaluation.

12.     In November 2003, Colimore and Lee met with staff from the Philadelphia Industrial Development Corporation ("PIDC"), Commonwealth Senator Fumo, Market tenants and Market representatives to discuss relocation of the Market to the Navy Yard site.  For this meeting, Colimore and Lee created and presented designs for the Market to be located at the Navy Yard.  Colimore and Lee advised PDIC that the designs were to remain Colimore and Lee's.

13.     In early December 2003, Colimore and Lee submitted to the Market three (3) drawings containing designs for the Market to be located at the Navy Yard.  Each drawing was dated November 13, 2003, was created by Colimore and Lee, and contained a statement that it was subject to copyright, and that Colimore and Lee were the owners of those copyrights.  The

20741.001/87752
10.12.10

designs contained in these drawings were based on earlier designs created by Colimore and Lee for the redesign of the Market.

14.     In April 2004, the Market asked Colimore and Lee to prepare a comprehensive concept plan and development analysis for relocation of the Market to a new site at Delaware and Oregon Avenues. This effort included site design plans, typical section, typical unit, second floor design, aerial view renderings and an estimate of development costs for the Market of $117,057,698. This plan included a design for a unique concourse produce market and contained Colimore and Lee's copyright notice dated April 22, 2004. These designs were based on earlier designs created by Colimore and Lee.

15.     In late May 2004, the Market instructed Colimore and Lee to proceed with their plans and designs for the Market to be relocated at the Delaware and Oregon Avenues site. In June 2004, numerous meetings were held among Colimore, Lee, representatives of the Market and others. In late June 2004, Colimore and Lee presented to the Market revisions to their cost analysis for relocation of the Market to the Delaware and Oregon Avenues site. The new cost was estimated to be $152,525,264. Upon information and belief, these projections, which were set forth in a letter report from Lee, were used by the Commonwealth's Governor as the basis for a request to the legislature for funds to relocate the Market to the Delaware and Oregon Avenues site.

16.     Colimore and Lee continued to work on the Project at the request of the Market. In mid April 2005, Colimore and Lee created additional detailed design plans for the proposed Market, bearing their copyright notice and based on their earlier designs. These design plans were included in a PowerPoint presentation prepared by Orbis Solutions, LLC for the annual meeting of PFFTC's stockholders. In attendance at this annual meeting, and seated at the

20741.001/86786-2

speaker's table with Colimore and Lee, was William Bremner, a senior employee of TranSystems.

17.    TranSystems' role in the Project began as a consultant and ultimately evolved to lead architect.

18.    As TranSystems' role in the Project became greater, Colimore and Lee expressed concern regarding their copyrights in the plans they had created and submitted to the Market as they did not intend to transfer their copyrights nor allow their use without participation.  In response, in mid May 2005, John H. Widman, a lawyer for the Market, asked Colimore and Lee to draft and submit an agreement regarding use of their plans, drawings and designs that would express Colimore and Lee's retention of copyright.  The proposed agreement, prepared by Colimore and Lee, contained a license for limited use of Colimore and Lee's drawings, plans and designs.  This agreement and an agreement for the services of Colimore and Lee were sent to the Market in mid June 2005 and again in mid September 2005.  The Market did not sign the agreements.

19.    From mid August through mid September 2005, numerous meetings occurred among Colimore, Lee and representatives of the Market during which Colimore and Lee provided  a design plan for the Project of their authorship that contained their copyright notice. In attendance at these meetings was William Bremner on behalf of TranSystems.

20.    In mid September 2005, while Colimore and Lee were still involved with the Project, TranSystems asked Colimore and Lee for their drawings and plans in electronic format so that they could more easily work with these drawings and plans in conjunction with Colimore and Lee.  TranSystems signed a digital release agreement in favor of Colimore and Lee.  The release contained restrictions on use of the plans and designs, and yet again advised TranSystems of Colimore and Lee's copyright in the plans and designs.

20741.001/87752
10.12.10

Case 2:10-cv-03903-BMS   Document 20-2   Filed 10/12/10   Page 7 of 15

21.    By late September 2005, TranSystems had been hired by the Market to work on the Project. Colimore and Lee completed designs for the Market and the seafood market to be developed at the Navy Yard site, together with aerial view renderings of the site, the Market and the seafood market, all of which were based on Colimore and Lee's earlier designs, plans and drawings which they authored and which contained their copyright notices.

22.    In early November 2005, the Market presented to Colimore and Lee a proposed agreement for their services in which the Market eliminated the provisions from Colimore and Lee's earlier submission regarding their ownership of copyright and their reservation of rights in their copyright. Colimore and Lee refused to sign this agreement. In a telephone call in mid November 2005, among Lee, representatives of the Market and Mr. Widman, Mr. Widman told Lee that the Market would not agree to their claims regarding ownership of copyright.

**Lee and Colimore's Registration of the Copyrighted Works and Assignment to Group 4**

23.    On December 2, 2005, Lee and Colimore registered the Philadelphia Regional Produce Terminal drawings and designs created in connection with the Project as architectural works. The copyright registration for these works is VAu 730-735. On May 11, 2010, Lee and Colimore registered the following works, which were created in connection with the Project, as map and/or technical drawings: 1) Philadelphia Regional Produce Market – Drawing H (Concourse Interior Building); 2) Philadelphia Regional Produce/Seafood Terminals – Navy Yard Site; 3) Philadelphia Regional Produce Market – Delaware Avenue Site; and 4) Philadelphia Regional Produce Market – Delaware Avenue Site (Drawing S-02). The copyright registrations for these works are: VA 1-725-440; VA 1-727-802; VA 1-727-798; VA 1-727-810. The 2005 and 2010 registrations, which reflect the works developed by Lee and Colimore in connection with the Project, are collectively referred to as the "Copyrighted Works." Lee and Colimore met all requirements for registration of the Copyrighted Works, including without

Case 2:10-cv-03903-BMS   Document 20-2   Filed 10/12/10   Page 8 of 15

limitation payment of all required filing fees.  True and accurate copies of the 2005 and 2010 copyright registrations are collectively attached hereto as **EXHIBIT B**.

24.     On August 26, 2010, Colimore assigned all of its rights, titles and interests in the Copyrighted Works – as well as three additional copyright registrations related to a separate project – to Group 4.  Ex. A at ¶ 1.  Through the Assignment, Colimore also transferred and assigned to Group 4 all rights, privileges and obligations arising as a result of the instant action. *Id.* ¶ 3.  On August 31, 2010, Colimore and Group 4 filed the Assignment with the Copyright Office for recordation and met all filing and recordation requirements. *Id.*

### Defendants' Infringements of the Copyrighted Works

25.     TranSystems, acting as the lead architect, transferred the Copyrighted Works, earlier provided to TranSystems in electronic format, to its CADD data base.  TranSystems removed Colimore and Lee's copyright notice and replaced their copyright notice with its copyright notice.  It reproduced, distributed and used these plans, designs, and drawings, now containing TranSystems' copyright notice in its title block.

26.     In mid-November 2005, a contractor, on behalf of the Market, revised the cost estimate to develop the Market and the seafood market to $210,087,910.

27.     In late November 2005, the Pennsylvania Department of General Services ("PDGS") advertised Project No. DGS 1203-1 for the development of the Market.  Lee was not included by the Market in the group that responded to this request for services. Colimore, however, was included as a consulting architect, and the Copyrighted Works were used by TranSystems in its submission to PDGS, although Colimore advised by a late November 2005 letter, copied to TranSystems and the Market, that "the drawings are not to be used for any additional purpose without written permission from [Colimore] and [Lee]."

20741.001/87752
10.12.10

28.     In late January 2006, TranSystems notified its assembled design team that they had been selected by PDGS to design the Market.

29.     The design team selected by the PDGS to design the Market attempted to revise, or value-engineer, the designs for the Market to reduce the size of the project based on the Copyrighted Works but were unsuccessful.   In early March 2006 the Market reemployed Colimore and Lee to perform additional services related to the Project.   Colimore and Lee continued to assert that they owned the copyrights to the designs, plans and drawings.   In early May 2006, Mr. Widman told Colimore and Lee to give up their claims to copyright or not participate in the project.   They were told they were "at a fork in the road."

30.     In late May 2006, Colimore sent a revised proposal for design services to TranSystems, again asserting ownership of copyright.   Colimore recommended that Lee also be hired to provide services, and that the copyright issues be addressed.   No agreement was reached for services or copyright and Lee performed no further services.

31.     In December 2006, Colimore met with representatives of the Market and TranSystems and reviewed with them the most current plans.   Colimore and Lee's plans were being used for discussion purposes, but the relocation of the Market to the Navy Yard site was uncertain.

32.     After March 23, 2007, Colimore's services were not requested, despite discussions that Colimore would remain involved with the project.   By June 2007, the Navy Yard site had been determined to be unavailable for relocation of the Market.

33.     On May 19, 2008, a news medium reported that the Market would be relocated to 6700 Essington Avenue, and that O'Neill would be the developer.   A September 2008 groundbreaking was announced.

20741.001/86786-2

34.     In September 2008, the Philadelphia Regional Port Authority announced that the cost to complete the Market at the Essington Avenue site would be $218.5 million, that it would be set on 63 acres and contain a 667,000 square foot state-of-the-art distribution center. The PRPA announcement claimed that the Market would be "the first of its kind in the United States."

35.     According to news reports, O'Neill was hired to develop the Market, and its affiliate, Essington, took title to the parcel of real property on which the Market was being constructed with the intention, as reported by the media, that Essington would lease the completed Market to PFFTC for a period of forty (40) years. Upon information and belief, an O'Neill affiliate, Merion, is the general contractor, and has reproduced and distributed the Copyrighted Works, and prepared derivative works from the Copyrighted Works, without the consent of Colimore or Lee.

36.     O'Neill, as the developer of the Market, has the right and ability to supervise and direct its affiliate Merion, which is the general contractor of the Market, as well as TranSystems, the lead architect of the Market. As such, O'Neill has the right and ability to direct Merion and TranSystems to infringe (or not to infringe) the Copyrighted Works through the development of the Market. O'Neill, as developer of the Market, receives a direct financial benefit through the unlawful development of the Market with the Copyrighted Works.

37.     Likewise, Essington as owner of the real property on which the Market is being constructed, and lessor of the Market, has the right and ability to supervise and direct Merion, the general contractor of the Market and TranSystems, the lead architect of the Market. As such, Essington has the right and ability to direct Merion and TranSytems to infringe (or not to infringe) the Copyrighted Works through the development of the Market, and to insist that they do so (or not do so). Essington, as owner of the real property on which the Market is being

20741.001/87752
10.12.10

constructed, and lessor of the Market, receives a direct financial benefit through the unlawful development of the Market with the Copyrighted Works.

38.     In late October 2009, Lee learned that the Market was under construction.  He visited the Essington Avenue site and discovered that the Market, as it then appeared, was substantially similar to the structure set forth in the Copyrighted Works, which Colimore and Lee made available to TranSystems and the Market.  A subsequent visit by Colimore and Lee in January 2010, and a review of plans and drawings for the Market prepared by TranSystems, confirmed that the buildings under construction at this site were the buildings designed by Colimore and Lee, the copyrights to which they owned and are owned by Lee and Group 4.

39.     Plaintiffs' designs, drawings and plans, the Copyrighted Works, are original works of authorship protected under copyright laws of the United States, and registered with the Registrar of Copyrights, United States Copyright Office, registration numbers: VAu 730-735; VA 1-725-440; VA 1-727-802; VA 1-727-798; VA 1-727-810. *See* Ex. B.

40.     Plaintiffs' designs, plans and drawings, the Copyrighted Works, were provided to the Market and to TranSystems in paper and electronic formats.  The Copyrighted Works have been used to design, develop and construct the Market at its current location without permission.

41.     At all times relevant to this Complaint, Colimore and Lee intended, and communicated to all involved with the development of the Market, that they would retain ownership of the copyrights to the their designs, plans and drawings, and that use by the Market, and TranSystems would be limited.  Ownership of the designs, plans and drawings, including the copyrights thereto, was never transferred by Colimore and/or Lee to the Market or any of these Defendants, nor was a license ever issued for the Copyrighted Works to be used in conjunction with the Essington Avenue site, the construction of the Market or any project without the participation of Colimore and Lee.  To the contrary, Colimore and Lee frequently provided

Page 11 of 15

notice to the Defendant recipients of the Copyrighted Works that they were the property of Colimore and Lee.

## Count I -- Copyright Infringement
## (Architectural Works)
## (TranSystems and Merion)

42.     Plaintiffs reallege paragraphs 1-41 as if fully set forth herein.

43.     Defendants TranSystems and Merion constructed the Market, or assisted in its construction.  The Market is a work portrayed in the Copyrighted Works, which include designs, plans and drawings delivered and made available to TranSystems, Merion and to the Market by Colimore and Lee.

44.     Plaintiffs are the owners of the Copyrighted Works, which include the Market designs, plans and drawings, referenced to herein including the copyright therein, and the architectural works contained therein.  They have registered the copyrights to the architectural works embodied in the designs, plans and drawings.  *See* Ex. B.

45.     Plaintiffs have not granted these Defendants, or anyone else, a license to build the Market from their Copyrighted Works or from derivatives thereof.

## Count II - Copyright Infringement
## (Technical Drawings)
## (TranSystems and Merion)

46.     Plaintiffs reallege paragraphs 1-41 as if fully set forth herein.

47.     Plaintiffs own the copyrights to the technical drawings provided to TranSystems and the Market for design and construction of the Market.

48.     Plaintiffs have not licensed or otherwise authorized these Defendants, or anyone else, to copy the designs, plans and drawings, or make derivative works therefrom.

49.     Defendants TranSystems and Merion copied the Copyrighted Works, which include designs, plans and drawings, and made derivative works therefrom, without Plaintiffs'

20741.001/87752
10.12.10

consent for use in the design and construction of the Market, and contrary to Plaintiffs' repeated assertion of copyright ownership and interest in the designs, plans and drawings.

## Count III - Copyright Infringement
### (Vicarious Liability)
### (O'Neill and Essington)

50.     Plaintiffs reallege paragraphs 1-41 as if fully set forth herein.

51.     Upon information and belief, Defendants O'Neill and Essington possessed the right and ability to supervise the infringing conduct complained of herein at all times relevant hereto and to prevent use of Plaintiffs' copyrighted works.

52.     Also upon information and belief, Defendants O'Neill and Essington as developer of the Market, owner of the real property on which the Market is being constructed, and lessor of the Market, have an obvious and direct financial interest in the exploitation of Plaintiffs' Copyrighted Works, in that both have derived or intend to derive significant revenues from the design and construction of the Market using the Copyrighted Works.

## Count IV - Copyright Infringement
### (Digital Millennium Copyright Act)
### (TranSystems)

53.     Plaintiffs reallege paragraphs 1-41 as if fully set forth herein.

54.     Colimore and Lee created and provided plans and designs for the Market to TranSystems.

55.     These plans and designs contained their copyright notice, containing their names and notification that they were the owners of the copyright to the plans and designs that they authored (the "Copyright Management Information").

56.     TranSystems intentionally deleted Plaintiffs' Copyright Management Information from the plans and designs, and replaced it with TranSystems' own Copyright Management Information.

20741.001/86786-2

Case 2:10-cv-03903-BMS   Document 20-2   Filed 10/12/10   Page 14 of 15

57.     At no time did Plaintiffs authorize TranSystems to remove their Copyright Management Information or replace it with TranSystems' Copyright Management Information.

### Count V - Copyright Infringement
### (Contributory Infringement)
### (TranSystems)

58.     Plaintiffs reallege paragraphs 1-41 as if fully set forth herein.

59.     TranSystems, with knowledge of Merion's infringing activity, which, as alleged above, included copying and making derivative works from the Copyrighted Works, and constructing or assisting in the construction of the Market, induced, caused or materially contributed to Merion's infringing conduct; including, by providing Merion with Plaintiffs' copyrighted designs, plans and drawings.

WHEREFORE, Plaintiffs pray that this Court issue an order and judgment:

A.     Awarding Plaintiffs monetary damages of no less than Twelve Million Dollars ($12,000,000) for Defendants' copyright infringement, including, but not limited to, all actual damages suffered as a result of the infringement, Defendants' profits attributable to the infringement, and other expenses, along with pre-trial and post-trial interest at rates allowable by law;

B.     Requiring an accounting of all proceeds, revenue and profits of Defendants concerning any proceeds, revenue and profits of business obtained through the use of Plaintiffs' copyrighted material, and awarding all such profits to Plaintiffs;

C.     Awarding Plaintiffs their attorneys' fees and costs of this action; and

D.     Granting such other and further legal and equitable relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial of all claims in the above-captioned matter.

20741.001/87752
10.12.10

Respectfully submitted,


/S/

Date:   October 12, 2010

James B. Astrachan, PA Bar No. 204624
Astrachan Gunst Thomas Rubin, P.C.
217 East Redwood Street, 21st Floor
Baltimore, Maryland  21202
410.783.3550 telephone
410.783.3530 facsimile
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 12th day of October, 2010, a copy of the Second Amended Complaint was filed electronically as an exhibit to the Motion for Leave to File Second Amended Complaint, is available for viewing and downloading from the ECF system, and was served via ECF in accordance with the Local Rules upon the following:

Albert Saltz, Esquire
Saltz Matkov P.C.
1171 Lancaster Avenue
Suite 101
Berwyn, Pennsylvania 19312
*Attorneys for Defendant TranSystems, Inc.*

Vincent V. Carissimi, Esquire
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
*Attorneys for Defendants O'Neill Properties Group, L.P.,*
*Essington Avenue Partners II, L.P. and Merion*
*Construction Group, Inc.*


/S/

James B. Astrachan

20741.001/86786-2